Richard S. Busch (SBN 319881)
*richard.busch@arlaw.com*
Mark L. Block (SBN 115457)
*mark.block@arlaw.com*
Andrew H. "Drew" Davis (pro hac vice forthcoming)
*drew.davis@arlaw.com*
David Niemierzycki (pro hac vice forthcoming)
*david.niemierzycki@arlaw.com*
ADAMS & REESE, LLP
1600 West End Ave., Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470

Jeffrey E. Faucette (SBN 193066)
jeff@skaggsfaucette.com
Martin R. Glick (SBN 40187)
marty@skaggsfaucette.com
SKAGGS FAUCETTE LLP
505 Montgomery Street, 11th Floor
San Francisco CA 94111
Tel: (415) 874-3181
Fax: (888) 980- 6547

*Attorneys for Plaintiff, Gerencia 360 Music, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GERENCIA 360 MUSIC, INC.<br><br>Plaintiff,<br><br>v.<br><br>SUNO, INC.; BRIGHT DATA LTD.; and BRIGHT DATA, INC.,<br><br>Defendants. | Case Number: 3:26-cv-09248<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Gerencia 360 Music, Inc. ("Gerencia") for its complaint against Defendants, Suno, Inc. ("Suno"), Bright Data Ltd., and Bright Data, Inc. (collectively, Bright Data, Ltd. and Bright Data, Inc. are referred to as "Bright Data") (collectively, Suno and Bright Data are referred to as "Defendants") alleges, on personal knowledge as to matters relating to itself, and on information and belief as to all other matters, as follows:

## I. Nature of the Case

1. Gerencia is an independent record label, music publisher, booking agency and management company which owns or controls, in whole and in part, the exclusive rights to hundreds of valuable musical compositions and master recordings pursuant to its contracts with songwriters, artists, and other rights holders. Gerencia specializes in Regional Mexican and Latin music, representing notable artists such as Adriel Favela, Cornelio Vega y Su Dinastia, and Noel Torres. It brings this action to enforce these rights against the Defendants who have built their entire business model based on copyright infringement at a scale heretofore unseen. As explained below, Suno (with assistance from Bright Data) engaged in infringement of Gerencia's Spanish language works so that it could quickly capture a significant share of the Spanish language AI user market.

2. Gerencia's catalog includes famous, evergreen hits in the Regional Mexican and Latin music genre, with over six billion streams between them including, inter alia, "Miami Vibe" performed by Codigo FN and Adriel Favela; "A Cuando Me Quede" performed by Givanny Ayala; and many more names and titles. Gerencia's catalog includes repeat Billboard performance, durable chart runs, multi-level RIAA certifications, RIAA awards, a Latin America Music Award, ASCAP and BMI recognition, and multiple SESAC Latina Performance Awards. A complete list of those Musical Compositions and Sound Recordings at issue is attached hereto as Exhibits A and B (hereinafter, collectively the "Works"). The Works contains some of the most iconic Regional Mexican and Latin lyrics and melodies in music history. A list of further examples of the iconic Gerencia songs are identified below.

3. Suno, a Delaware Corporation with its principal place of business in Cambridge, Mass., with additional offices in New York, Los Angeles, and San Francisco, has admitted to copying "essentially all music files of reasonable quality that are accessible on the open Internet" to train its

AI music generator—a dataset of tens of millions of songs/recordings that, given its scope, necessarily includes Gerencia's copyrighted works. Indeed, according to publicly available sources, like *The Atlantic's* AI Watchdog (first published September 2025, expanded in music search tools in June 2026), confirms that many of the Works appear in data sets known to be used by AI companies in the training of AI models. Publicly available sources also confirm that Suno accessed these works from licensed streaming services (like Spotify, YouTube, SoundCloud) and paywalled platforms (*e.g.* Tidal) by scraping and circumventing technological access controls—in part through the use of tools and services supplied by Defendant Bright Data (as further defined below more specifically). Gerencia never authorized any Defendant to copy, reproduce, or otherwise use its copyrighted works for AI training or any other purpose.

4. Suno did so in a manner that completely disregards the rights of Gerencia by making unlicensed copies of their Works, as well as server copies, removing Copyright Management Information ("CMI"), and training the AI models themselves to ***<u>disregard</u>*** the CMI in both its training and output to conceal the infringement.

5. Suno took these copyrighted musical works and/or sound recordings embodying them and trained its AI model so that its users, which number over ten million, can create sound recordings based upon prompts. Suno operates on a "freemium" model allowing some free access, but charges users monthly subscription fees to fully use its platform, which produces AI-generated music files designed to mimic human-made songs.

6. Suno's users do not even have to write lyrics nor melodies. No, armed with the illicit copies of millions of copyrighted works – including Gerencia's – Suno's AI model can create an entire song, including the instrumentals, vocals, and entirely generated lyrics, all thanks to the training on these unlicensed copies of the works in its library. That is, Suno made illicit copies of millions of copyrighted musical works, including Gerencia's – and then, without any remuneration to the rights holders – created a platform where anyone capable of paying $10 per month to create entire songs based entirely on these illicit copies. This is not speculation, Suno's Founder and CEO, Mikey Shulman gave an interview admitting, "One of the biggest challenges in modeling music is just that a three-minute song has so many data points in it that it is really difficult for models to accurately

capture all of the interesting stuff there. Our models are taught to just continue a piece of music. And with that, and a little bit of extra sauce for getting these things to start properly, we can go from an idea in somebody's head, to an entire three minute song very easily."[1] That is, while Suno advertises itself as a completely generative AI music creation service that generates songs from whole cloth, ***its own CEO*** admits that it has just trained its models to "continue a piece of music" – that is, the music that Suno and its agent, Bright Data, illegally scraped and copied to train its Model in blatant disregard to the rights of the copyright holders to create unlicensed derivative works thereof.

7. Gerencia's Works are especially important to Suno because they are hugely popular Spanish language works, which Suno has misappropriated to train its models so they may provide Spanish language songs in response to user queries. Without its infringement of Gerencia's Spanish language copyrighted Works, Suno would not have been well-positioned to capture a significant share of the Spanish language AI user market.

8. Suno has materially enjoyed the fruits of others' labor closing its Series D in June 2026 raising over $400 million at a $5.4 ***billion*** valuation.[2]

9. Defendant Bright Data Ltd. is an Israeli company with its principal offices in Netanya, Israel. Upon information and belief, Bright Data Ltd. does business in the United States through its wholly-owned subsidiary, Bright Data, Inc. (collectively "Bright Data") provides data-scraping, proxy-network, and dataset services sold to customers including AI developers, including, as relevant here for Suno. Bright Data develops, markets, and sells web-scraping infrastructure, residential and datacenter proxy networks, and pre-packaged datasets to business customers worldwide, including companies in this District and throughout the United States. Upon information and belief, Bright Data maintains offices and/or employs personnel in the United States, transacts continuous and systematic business in the United States, and has purposefully directed its scraping tools and services at copyrighted content hosted on U.S.-based platforms.

---

[1] "Suno Generates Beautiful Songs with Oracle Cloud". www.youtube.com/ watch?v=aKlIQiS8MLc

[2] Stassen, Murray, "Suno Raises Over $400 Million, Pushing Valuation to $5.4 Billion." Music Business Worldwide, <www.musicbusinessworldwide.com/ suno-raises-over-400-million-pushing-valuation-to-5-4-billion/> (last visited July 30, 2026).

10. Bright Data claims to be establishing the "standard for Ethical Web Data Collection."[3] Indeed, in lawsuits against X (formerly Twitter) and Meta, Bright Data assured this Court previously that its suite of technologies are used only "to synthesize vast amounts of public data." *See X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 839 (N.D. Cal. 2024) (finding no breach of X's Terms of Service for scraping data therefrom); *Meta Platforms, Inc. v. Bright Data Ltd.*, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024) (same, no breach of Meta's Terms of Service). However, the aggregation of non-copyrighted public information is vastly different than the creation of millions of unlicensed copies of songs/masters in playable format and copyrighted lyrics to songs. Publicly available sources show that Suno, using proxy services it acquired from Bright Data, scraped "millions of songs and lyrics" from YouTube Music, Deezer, and Genius.[4]

11. That is, Bright Data provided services to Suno which are only good for copyright infringement – namely the making of unlicensed copies of songs and lyrics – including Gerencia's Works – from licensed sources like YouTube, Deezer, and Genius. Indeed, Bright Data even advertises that its suite of products can use "puppets" to mimic human interface with websites and get around CAPTCHAs[5] and other blockers used to prevent this kind of data scraping, claiming it can provide "One API call. Any website. Zero blocks."[6] Bright Data's advertising admits that its services create unlicensed copies. It advertises that its services can create copies of "Separated audio tracks in m4a [file format], aligned to video timestamps. Ideal for ASR [Automatic Speech Recognition], audio-language models and multimodal training that needs the audio signal preserved."[7]

12. While ironically calling these tools "100% ethical and compliant"[8] Bright Data is

---

[3] *See* Bright Data's Trust Center: Leading Ethical Web Data Collection, <www.brightdata.com/trustcenter> (last visited July 30, 2026).

[4] Koebler, Jason, "Hack Reveals Suno AI Music Generator Scraped YouTube, Deezer, and Genius," 404 Media, <www.404media.co/hack-reveals-suno-ai-music-generator-scraped-youtube-deezer-and-genius/> (last visited July 30, 2026)

[5] The "Completely Automated Public Turing test to tell Computers and Humans Apart" or CAPTCHA is a security test used by websites to determine whether a visitor is a human or a computer program (a 'bot').

[6] <www.brightdata.com/products/web-unlocker> (last visited July 30, 2026)

[7] <www.brightdata.com/ai/video-data> (last visited July 30, 2026)

[8] *Id.*

admitting that its services can be used to make copies of any song or video from the internet regardless of whether Bright Data or its users have a license to create said copies. Worse, publicly available sources have now confirmed that Suno used Bright Data's services to do just that. Public sources have identified files from Suno's training libraries include files like "youtube_music" which includes over two million music clips of approximately 113,879 hours – the equivalent of thirteen ***years*** – of music files scraped from YouTube.[9]

13. Bright Data's tools are specifically designed to scrape music files *en masse* and strip them of CMI and otherwise prepare them to train AI Models. These tools not only violate the Digital Millennium Copyright Act's anti-circumvention and anti-removal of CMI provisions, but also render Bright Data contributorily liable for Suno's copyright infringement.

14. Like the other Defendants, Bright Data has created enormous revenue by selling its tools to copyright infringers, enjoying 50% year-on-year revenue growth, surpassing $300 million in revenue in 2025 with a projected Annual Recurring Revenue projection of $400 million in 2026.[10]

## II. THE PARTIES

15. Plaintiff Gerencia 360 Music, Inc. is a California corporation with its principal place of business in Burbank, California. Gerencia is a leading independent music company specializing in Regional Mexican and Latin music that owns or exclusively controls copyrights (publisher share, writer share, and/or administration rights) in hundreds of musical compositions and master recordings. Gerencia's catalog includes iconic, chart-topping Mexican Regional and Latin songs written and performed by some of the top legendary artists and songwriters in this genre.

16. Each Work listed in Exhibits A and B constitutes an original work or copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101, et seq.. Each Work on Exhibit A has been registered with the U.S. Copyright Office prior to the infringement by Defendants as evidenced by the registration numbers listed therein. Each Work on Exhibit B is entirely owned or controlled by Gerencia, and while the Exhibit B Works have not been registered with the U.S. Copyright Office,

---

[9] *See* note 4, *supra*.
[10] "Bright Data reaches $300m ARR amidst demand for web data" Asymmetrix. <www.asymmetrixintelligence.substack.com/p/bright-data-reaches-300m-arr-amidst> (last visited July 30, 2026)

they have all been affixed in a tangible medium and therefore afforded copyright protections pursuant to 17 U.S.C. § 102. The copyrights for each of the Works in Exhibits A and B remain valid and subsisting, and have been owned and/or controlled by Gerencia, in whole or in part, at all times relevant to the allegations in this Complaint.

17. Defendant Suno, Inc. is a Delaware corporation with its principal place of business at 17 Dunster Street, Cambridge, Massachusetts 02138. Suno develops, operates, and sells a generative AI music service that creates digital music based on user prompts. Suno charges users monthly subscription fees to use its platform, which produces AI-generated music files designed to mimic human-made songs.

18. Defendant Bright Data Ltd. is an Israeli company with its principal offices in Netanya, Israel, doing business in the United States through its data-scraping, proxy-network, and dataset services sold to customers including AI developers. Bright Data develops, markets, and sells web-scraping infrastructure, residential and datacenter proxy networks, and pre-packaged datasets to business customers worldwide, including companies in this District and throughout the United States. Upon information and belief, Bright Data maintains offices and/or employs personnel in the United States, transacts continuous and systematic business in the United States, and has purposefully directed its scraping tools and services at copyrighted content hosted on U.S.-based platforms.

19. Defendant Bright Data Inc., is a Delaware corporation with offices in Manhattan, New York, NY and in San Francisco, CA. Upon information and belief, Bright Data, Inc. is a wholly-owned subsidiary of Bright Data Ltd. through which Bright Data Ltd. conducts business in the United States.

## III. JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright actions) because the claims alleged herein arise under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205.

21. This Court has personal jurisdiction over Defendant Suno because Suno has transacted business in this District, including offering and selling its AI music generation service to customers

in California via the Internet; because Suno's infringing conduct has been directed at and caused harm in this District; because the infringing conduct occurred in this District given Suno's use of Oracle Servers physically located in this District; because, on information and belief, it operates its business out of its offices located in this District; and because the exercise of personal jurisdiction over Suno comports with due process. Suno operates its business out of offices in Cambridge, Mass., New York, Los Angeles, and, more recently San Francisco. It has been reported that Suno opened its San Francisco office in late March 2026 in SoMa ("South of Market" area). S. Chen, *AI music generator Suno opens SF office* (April 3, 2026). According to that report, Suno's co-founder/CTO Georg Kucsko told Axios (via email) that opening doors in San Francisco "will be critical as we continue to scale" and that the company is "investing especially heavily in our machine learning team to develop our frontier music model").[11] Since that time, Suno has been actively recruiting employees to work in its San Francisco office. *See* E. Tanaka, "AI Song Factory Suno Sneaks Into SoMa as San Francisco Tech Beat Kicks Back In," *Hoodline* (April 3, 2026) (noting at that time, "Local job listings point to an active recruitment drive for engineers, product designers and machine learning researchers based in San Francisco").[12] According to that report, many of the roles offered on Indeed "list San Francisco as the required location and note that some positions will be on site." *Id*. As of August 2026, job openings on Indeed include Lead Machine Learning Data Operations, Senior Director of Customer Experience, Senior Corporate Recruiter, Senior Counsel, Director of Accounting, and others.[13] In addition, Suno uses Oracle servers "to train its proprietary machine learning models and support growing demand for its next generation of generative music models" Oracle, ***AI Innovators Flock to Oracle to Address Some of the World's Most Pressing Challenges*** (March 18, 2024). According to publicly available sources, Oracle's servers are located in Virginia, Illinois, Phoenix, San Jose, CA (Northern District), as well as Mexico and Canada. According to other public sources, each of Suno's five fundraising rounds were pitched to and lead by venture capital firms located in the Northern

---

[11] https://www.axios.com/local/san-francisco/2026/04/03/suno-ai-music-generator-startup-office-expansion

[12] https://hoodline.com/2026/04/ai-song-factory-suno-sneaks-into-soma-as-san-francisco-tech-beat-kicks-back-in/

[13] https://www.indeed.com/q-suno-l-san-francisco%2C-ca-jobs.html?vjk=34349af3bb314a9a

District—Seed round (Matrix Ventures, Cambridge/San Francisco) Series A round (Matrix Ventures, Cambridge/San Francisco), B round (Lightspeed Ventures, Menlo Park), C round (Menlo Ventures, Menlo Park), and D round (Bond Capital, San Francisco). Furthermore, this Court may exercise jurisdiction over Suno through the suit-related contacts with this state of Suno's agent, Bright Data, whose services were used to create the infringing copies, and as discussed herein, Bright Data has already been adjudicated to have sufficient contacts with California and the District for personal jurisdiction over it, as discussed below.

22. This Court has personal jurisdiction over Defendant Bright Data Ltd. and Bright Data, Inc. because Bright Data (collectively) has transacted business in this District, including selling its web-scraping tools, proxy-network services, and datasets to customers in California and throughout the United States, including AI developers in this District; because Bright Data has purposefully directed its commercial activities toward the forum; and because the exercise of personal jurisdiction over Bright Data comports with due process. Indeed, this Court has previously denied Bright Data Ltd.'s motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), finding, "Bright Data had sufficient contacts with California and the district." *X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 841 (N.D. Cal. 2024); *see also X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 422075, at *2 (N.D. Cal. Feb. 5, 2024) ("There is no question that Bright Data has sufficient contacts with California and this district such that these claims should proceed in this district court. Bright Data is hardly the non-resident defendant that specific personal jurisdiction aspires to insulate."). Bright Data, Inc. is also properly subject to this Court's jurisdiction given it maintains an office within the District and has engaged in suit-related conduct in the district.

23. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or 1400 because Defendant Suno maintains an office in this District to, among other things, manage the training of its AI Models and the data servers on which they operate, and uses data servers located in the District through Oracle Cloud Infrastructure for that purpose – which includes hosting the illicit copies of Gerencia's Works on these servers. Furthermore, venue is proper in this District given Suno's contacts with the District through its agent, Bright Data, whose services it used to create the infringing copies, and given this Court has already found jurisdiction and venue proper in suits regarding similar

conduct by Bright Data, as discussed herein.

24. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or 1400 because Defendant Bright Data maintains offices in the District, and its suit-related conduct occurred within the District. Indeed, as this Court previously noted, "Bright Data has directed potential customers interested in the data, tools, and services at issue to a sales office in downtown San Francisco as recently as October 2022; has located many members of its business development and sales team in the Bay Area, including its Chief Revenue Officer and Global Head of Presales; and has advertised and sold California IP address proxies that allow customers to '[o]vercome all blocks all of the time in California.'" *X Corp.*, 2024 WL 422075, at *2.

## IV. DIVISIONAL ASSIGNMENT

25. Pursuant to the Court's Assignment Plan (General Order No. 44), this action is an intellectual property action within the meaning of Local Rule 3-2(c) and therefore is not subject to intradistrict venue provisions.

## V. FACTUAL BACKGROUND

### A. Gerencia and Its Copyrights

26. Gerencia is a leading independent music company that owns or exclusively controls copyrights in hundreds of musical compositions and master recordings in the Regional Mexican and Latin genre. Gerencia's catalog includes works by some of the most celebrated Regional Mexican and Latin songwriters and recording artists.

27. Gerencia knows that great music starts with great songwriting and masterful lyricists, and is committed to supporting and protecting the creative works its songwriters have entrusted to it. As a publisher and record label, Gerencia regularly enters into licenses and other agreements for the works it owns, through which Gerencia compensates its songwriters for their share of earnings. Gerencia's songwriters rely on the income received from these transactions to support their livelihood and art. This system of licensing, permissions, and authorized use is the backbone of the music publishing industry, and ensures that the songwriters and publishers who have invested their blood, sweat, tears, heartache, elation, and experience into their creative works receive compensation for the use of those works.

28. U.S. copyright law simply does not let technology platforms like Suno ride roughshod over these Constitutionally-mandated protections of creative expression. Indeed, copyright owners necessarily have the right to police the use of their copyrighted works. "The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property." *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 997 (C.D. Cal. 2006) ("The right to exclude is inherent in the grant of a copyright; a copyright is not improperly expanded simply because the owner has exercised his or her power to exclude."). These are age-old, hornbook copyright principles. Defendants simply ignored them.

29. Gerencia, its songwriters, and its artists, rely on U.S. copyright law to protect their works from infringement. Without such protections, the music publishing industry would not function because songwriters and artists would be unable to profit from their work, and because publishers and record companies like Gerencia would lack the financial ability and incentive to invest in the careers and promote the works of their songwriters/artists.

30. Gerencia generates revenue from its catalog by licensing compositions for use in recordings, live performances, synchronization placements, mechanical reproductions, print, digital transmissions, and streaming. The value of these licensing activities depends entirely on Gerencia's ability to enforce its exclusive right to authorize—or decline to authorize—the reproduction, distribution, and public performance of its copyrighted works. Defendants' conduct directly undermines and dilutes that exclusivity.

31. One way Gerencia exploits its copyrights is to grant licenses to the display of the copyrighted lyrics of its works to an aggregator website. These licenses require the licensees to provide the corresponding song title, songwriter(s), and other identifying information for the Works – *i.e.* the CMI. The display of the CMI is essential for informing consumers about the authors of musical works, ensuring credit is given to creators, maintaining copyright protections, ***<u>and</u>*** to direct other putative licensees to Gerencia. Any removal or alteration of CMI by unlicensed parties violates these rights and harms the interests of Gerencia and its songwriters. It also violates the Copyright Act.

32. Gerencia's catalog includes some of the most recognizable and commercially valuable songs in the history of Regional Mexican and Latin music. A list of Gerencia's copyrighted musical compositions and sound recordings that Defendants have infringed is set forth in Exhibit A, attached hereto and incorporated by reference. A list of Gerencia's copyrighted musical compositions and sound recordings which Defendants have removed and/or circumvented CMI is set forth in Exhibit B, attached hereto and incorporated by reference.

**B. Suno's Infringing Conduct**

33. Suno operates a subscription-based generative AI platform that generates new songs and audio recordings in response to user text prompts. Suno became widely available starting with version 3 on March 24, 2024, with the current version 5.5 launched in March 2026.

34. Suno's AI model was trained on a corpus of recorded music that, by Suno's own admission in separate litigation, encompasses substantially all available commercial recordings of adequate fidelity. In its answer to the complaint in *UMG Recordings, Inc. v. Suno, Inc.*, No. 1:24-cv-11611-FDS (D. Mass.), Suno stated that its "training data includes essentially all music files of reasonable quality that are accessible on the open Internet, abiding by paywalls, password protections, and the like."

35. Gerencia's Works are among the most widely distributed works in the Regional Mexican and Latin musical genre on licensed streaming services. Given Suno's self-described training methodology—which involved harvesting effectively all available recordings—it is very likely that Gerencia's Works were copied into Suno's training sets. Gerencia's works are available on Spotify, Apple Music, YouTube Amazon Music, SoundCloud, and Tidal, among others, all of which are duly licensed with Gerencia and require some form of account registration, subscription, or other access credential to use.

36. Upon information and belief, Suno obtained copies of Gerencia's copyrighted works by accessing these platforms – including specifically YouTube and Deezer – through automated scraping tools that bypassed login requirements, subscription gates, and technical anti-bot defenses, in part through tools and proxy services supplied by Defendant Bright Data. Suno then ingested these unauthorized copies into its training pipeline, producing an AI model capable of generating audio

that closely imitates the style, structure, and expressive character of the copyrighted recordings on which it was trained.

37. As discussed above, Suno's Founder and CEO, Mikey Shulman admitted that the model faces "challenges in modeling music" and "[O]ur models are taught to just continue a piece of music."[14]

38. Suno never sought or obtained a license from Gerencia to reproduce, copy, or train on any composition or sound recording in Gerencia's catalog, much less for the Works. Suno's training-data practices constitute direct copyright infringement on a massive scale.

39. While Suno claims to have put in guard rails to prevent output that is similar to existing artists, these guardrails are easily circumvented. For example, while the platform will not permit a user to include "Reba McEntire" in the prompt, it will allow users to include the prompt "in the style of Reba McIntyre [sic]" in creating a female-vocal country song in McEntire's style. Indeed, third party applications like "HookGenius" are advertising services to get around these guardrails by providing users to generate artist-specific prompts for Suno to generate entire albums based on the users' favorite artists.[15]

40. Suno's platform generates lyrics based on user prompts or will accept user inputs. While Suno's guardrails may sometimes prevent users from importing copyrighted lyrics in their entirety, these guardrails are easy to circumvent. For example, one of the Gerencia Works is entitled "15 Besos" as performed by Cornelio Vega y Su Dinastia. While Suno would not create a "Norteño" song where the Spanish lyrics for "15 Besos" were supplied, Suno did create a song in the Norteño style with the lyrics directly translated into English, generating the name "Quince Besos". "Quince" is Spanish for fifteen. Below are the original Spanish Lyrics compared with the English translation that Suno used to create "Quince Besos". While the lyrics were supplied by the user, Suno still generated a song in the same genre with substantial musical similarities including the generation of a male singing voice for the translated, derivative work lyrics.

---

[14] "Suno Generates Beautiful Songs with Oracle Cloud". www.youtube.com/watch?v=aKlIQiS8MLc

[15] *See* https://hookgenius.app/learn/suno-eminem-style/ and https://hookgenius.app/pricing/

**Original Spanish Lyrics:**
[Verse]
Mi vida volvió a la normalidad
Desde que por primera vez te vi
Tus fotos me obligaron a quererte
Esa boquita que tienes
No se ve en ninguna parte
Amo verte sonreír
He estado a punto de querer llorar
Por no poder tener cerca de mí
Tus ojos, que me dan calma al mirarte
Ni la más fina obra de arte
Compite con tu belleza
Mil gracias por existir

[Chorus]
15 Besos te daré
Cada minuto grabaré en tu piel
Ese recuerdo, disfrutaré ese momento
Recordarte que te quiero
Y eres lo que había soñado
Exactamente para mí
…

**English Translation Used by Suno:**
[verse 1]
My life returned to normal
the moment I first saw you.
Your photos made me fall for you—
that lovely mouth of yours
is unlike any other;
I love seeing you smile.
I've come close to tears,
unable to have you close to me—
your eyes, which bring me peace when I look at you.
Not even the finest work of art
can rival your beauty.
A thousand thanks for existing.

[Chorus]
I'll give you fifteen kisses
I'll etch that memory onto your skin, minute by minute
I'll savor that moment
Reminding you that I love you
And that you are exactly what I had dreamed of for myself

**C. Bright Data's Conduct**

41. Bright Data is a commercial vendor of web-scraping infrastructure whose business model is built on enabling customers to extract data from websites at scale—including websites that employ technical measures to prevent exactly that kind of bulk automated extraction. Bright Data's product suite includes residential and datacenter proxy networks that rotate IP addresses to evade rate limits and IP bans; a "Web Unlocker" service designed to defeat CAPTCHAs, JavaScript challenges, and bot-detection systems; and a "Scraping Browser" that renders pages in a browser environment without the headers and footers to circumvent client-side protections.

42. As discussed above, CMI regularly exists in the headers and footers. Making the deliberate choice to exclude headers and footers is identical to making the deliberate choice to remove CMI.

43. These products exist principally to defeat the access-control technologies that websites deploy to prevent unauthorized automated data extraction. Their commercial value lies precisely in

their capacity to circumvent such controls. Bright Data markets these capabilities openly, advertising its ability to bypass anti-scraping defenses and deliver data from otherwise inaccessible sources.

44. Upon information and belief, Bright Data's tools and services were used—either by Bright Data itself on behalf of its customer, Suno or by Suno itself—to extract Gerencia's copyrighted Works from licensed streaming and lyrics platforms. This extraction required circumventing the technological protection measures those platforms employ: authentication gates, subscription paywalls, rate limiting, CAPTCHA challenges, and robots.txt access restrictions, as well as removal of CMI.

45. Upon information and belief, Bright Data supplied the resulting scraped data—or the tools to generate it—to Suno with knowledge that the data consisted of copyrighted material and would be used to train commercial AI models without authorization from the copyright holders. Bright Data's awareness of this end use is inferred from the nature of its customer relationships with AI development companies, the public prominence of the AI training-data debate since at least 2023, and the widespread litigation over unauthorized AI training on copyrighted content.

46. Bright Data's role in Suno's unlawful copyright infringement was not publicly known until a data hack and public release showed that Suno used Bright Data's tools to scrape the internet which was reported first by 404 Media on July 15, 2026.[16]

### D. Harm to Gerencia

47. Defendants' unlawful infringing conduct has caused and continues to harm Gerencia and the songwriters and artists it represents (and/or whose works it owns).

48. The Gerencia Works are world-famous pieces of music in the Regional Mexican and Latin genres – the very kind of artistic expressions that the Copyright Act is designed to protect in fulfillment of the Constitutional mandate.

49. Without a single penny of remuneration – much less even a request for license – Defendants' massive, for-profit companies have engaged in rampant commercial copying, unauthorized access, removal of CMI. This has harmed Gerencia by, *inter alia*, devaluing its catalog,

[16] https://www.404media.co/hack-reveals-suno-ai-music-generator-scraped-youtube-deezer-and-genius/

diverting compensation away from Gerencia, precluding licensing opportunities, and divesting Gerencia's commercial control over these Works.

50. Meanwhile, Defendants have amassed massive fortunes by circumventing the protections afforded to Gerencia by the Copyright Act. Without the use of works such as those owned, controlled, or represented by Gerencia, Defendant Suno would have no business.

51. While simultaneously holding themselves out to be "ethical" companies, Suno has been knowingly and intentionally committing copyright infringement from inception of its AI models, and Bright Data knowingly provided them tools to commit this infringing conduct.

**E. Fair Use Does Not Apply**

52. As this Court in *Bartz v. Anthropic PBC*, 787 F. Supp. 3d. 1007, 1030-34 (N.D. Cal. June 23, 2025) ("*Bartz I*") determined following discovery, the practice of indefinite retention in a general-purpose archive is legally distinct from the narrower act of purchasing and scanning works solely to train a specific model. Suno has engaged in the exact same conduct: the indefinite retention of unlicensed copies of copyrighted works, under *Bartz I*, does not constitute fair use. Building and maintaining a permanent stockpile of copyrighted material for open-ended future exploitation fails every factor of the fair-use analysis: the purpose is acquisitive rather than transformative; entire works are retained without limitation; and the unauthorized copies function as market substitutes, displacing sales and licenses on a one-to-one basis. This Court did not mince words when it rejected any suggestion that the Copyright Act contains a technology-sector exception to these well-established principles. *Id.* at 1022 ("Anthropic seems to **believe that because some of the works it copied were sometimes used in training LLMs, Anthropic was entitled to take for free all the works in the world and keep them forever with no further accounting. There is no carveout, however, from the Copyright Act for AI companies.**") (emphasis added).[17]

53. While in other cases for copyright infringement, Defendants have waxed poetic about the necessity of progress and AI's value to society, there is simply no reason – other than rote expediency – to have that progress come at the cost of copyrights holders. Indeed, even if, accepting

[17] An LLM, or "Large Language Model," is a type of artificial intelligence program trained on massive amounts of text to recognize, translate, summarize, and generate human-like language.

*arguendo*, the procedural hurdles for ensuring proper licensing for the size of data needed for an effective AI Model, there exists an entire universe of public domain and non-copyrighted materials to train the models. For example, literally every (formerly) copyrighted work under U.S. Copyright law written before 1931 (1926 for sound recordings) has now entered the public domain.

54. Furthermore, these "expediency" arguments completely falter when compared to the $5.4 billion valuation that the Suno has garnered exploiting illicit copies of copyrighted works, including the Gerencia Works. The Works were created over many years, and Suno, by its infringing conduct, is destroying the value of these works in a matter of a few years with only profit as its motive. And there are AI companies and collective rights organizations who actually seek permission and pay rights holders to create data sets for AI training. Such companies include ElevenLabs, Musical AI, Symphonic, Soundverse, GEMA (through PLAI), GCX/Rightsify, and Troveo. Not only does this further undercut any claim that this is anything other than the greatest heist in human history, it directly demonstrates the harm Gerencia faces to license with these forthright entities that license and pay for use of copyrighted music.

55. And, of course, "Fair use presupposes good faith and fair dealing." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 540 (1985). Just as in *Harper & Row*, the copying and permanent retention of the Gerencia Works (in addition to the millions of other copyrighted works) was not the "incidental effect but the *intended purpose*." *Id.* (emphasis kept). Worse, the illicit copying, removal of CMI, and permanent retention of these copyrighted works *for the purpose* of regurgitating infringing copies thereof or create songs to directly compete falls well outside of the enumerated fair use activities set forth in the Copyright Act, 17 U.S.C. § 107. There is simply nothing fair about a company using theft to build for purely commercial purposes a multi-billion dollar business while those from which they steal receive nothing.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION – DIRECT COPYRIGHT INFRINGEMENT

### (AGAINST SUNO)

56. Gerencia re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

57. Gerencia owns or exclusively controls valid, subsisting copyrights in the musical compositions identified in Exhibit A and in numerous additional works.

58. Suno, without authorization from Gerencia, reproduced Gerencia's copyrighted compositions by: (a) scraping or otherwise obtaining copies from licensed streaming platforms and other online sources, including through the use of circumvention tools and services provided by Bright Data; (b) assembling those copies into training datasets; (c) unlawfully reproduced the musical compositions at issue here through the making of permanent server copies; and (d) processing those datasets through its model-training pipeline. Each such act independently violates Gerencia's exclusive rights under 17 U.S.C. §§ 106(1) and 106(2).

59. None of these acts qualifies as a fair use. As the *Bartz I* court held, the indefinite retention of copyrighted works in a general-purpose repository for uncommitted future exploitation is not transformative and fails every factor of the fair-use test. The same reasoning applies to Suno's and Bright Data's accumulation of copyrighted recordings for AI training at commercial scale without any license or compensating benefit to rights holders.

60. Defendant's infringement in these regards was willful. At all times relevant to this Complaint, Defendants had actual knowledge that they were making copies of Gerencia's Works without license or payment.

61. Suno, without authorization from Gerencia, has infringed and continues to infringe Gerencia's Works each time Suno's AI music generator reproduces, displays, performs, or prepares a derivative work based upon Gerencia's copyrighted Works. These infringing outputs include songs created in response to user prompts that are substantially similar, if not strikingly similar to, the Gerencia Works and unlicensed derivative works that incorporate, without a license, the original, copyrighted elements of the Gerencia Works.

62. Suno's leaked code shows that it deliberately endeavored it "stem splitting" *i.e.* breaking up sound recordings of musical compositions into separate tracks for vocals, drums, and the various instruments played. Further, Suno purportedly additionally deliberately sought out *a cappella* versions of the songs so that it could more faithfully create vocals based upon the infringed Works and further train its AI model on multiple iterations of the musical composition, especially with regard

to the lyrics of the song so that its model could "create" (*i.e.* regurgitate infringing derivative works) lyrics based thereupon.

63. Each infringing output by Suno constitutes an independent violation of Gerencia's exclusive rights to reproduce (§ 106(1)), prepare derivative works (§ 106(2)), distribute copies (§ 106(3)), publicly perform (§ 106(4), and publicly display (§ 106(5) its copyrighted Works.

64. Suno's output-stage infringement is willful. While Suno advertises that it enacted safeguards to prevent copying of copyrighted elements, these safeguards are easily overcome.

65. Gerencia has been damaged by Defendant Suno's infringement and is entitled to recover actual damages and Defendant Suno's profits under 17 U.S.C. § 504(b), or in the alternative, statutory damages of up to $150,000 per work willfully infringed under 17 U.S.C. § 504(c). The total statutory damages sought in this case for Defendant Suno's infringement of its 444 Works (listed on Exhibit A) equals $66,600,000.00.

**SECOND CAUSE OF ACTION – CONTRIBUTORY COPYRIGHT INFRINGEMENT**

**(AGAINST DEFENDANT BRIGHT DATA)**

66. Gerencia re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

67. Suno's unauthorized reproduction of Gerencia's copyrighted works for AI training, as alleged in Count I, constitutes direct infringement of Gerencia's copyrights in the Works listed in Exhibit A, incorporated by reference.

68. Bright Data had knowledge—actual or constructive—of Suno's direct infringement of the Exhibit A Works. Bright Data knew or had reason to know that: (a) the recordings and lyrics it scraped from streaming platforms and lyrics sites were protected by copyright; (b) its extraction of those works was unauthorized; and (c) the resulting copies were being supplied to, or used by, Suno to train a commercial AI music generator without any license from the copyright owners. Bright Data's knowledge is inferable from the public notoriety of AI-training copyright disputes since at least 2023, including extensive media coverage and multiple filed lawsuits.

69. Bright Data materially contributed to Suno's infringement by: (a) providing the scraping tools and proxy infrastructure that enabled Suno to obtain unauthorized copies at the

necessary scale; (b) directly scraping copyrighted works and assembling them into datasets supplied to Suno; and/or (c) offering circumvention services that defeated the access controls preventing Suno from copying the works on its own. Absent Bright Data's contribution, Suno could not have assembled its training corpus with comparable speed, breadth, or efficiency.

70. The standard for contributory liability in this Circuit is well established: a party that knows of another's infringement and materially contributes to it—or that has the ability to take straightforward steps to prevent continuing infringement yet fails to do so—is contributorily liable. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)); *see also Concord Music Group, Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL (N.D. Cal. Oct. 6, 2025) (denying motion to dismiss contributory infringement claim under this standard).

71. Bright Data's contributory infringement was willful.

72. Gerencia has been damaged by Bright Data's contributory infringement and is entitled to compensatory damages and Bright Data's profits under 17 U.S.C. § 504(b), or in the alternative, statutory damages of up to $150,000 per work willfully infringed under 17 U.S.C. § 504(c). There are 444 Works on Exhibit A, for a total of $66,600,000.

**THIRD CAUSE OF ACTION – CIRCUMVENTION OF PROTECTION MEASURES, 17 U.S.C. § 1201**

**(AGAINST ALL DEFENDANTS)**

73. Gerencia re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

74. Gerencia's copyrighted Works listed in Exhibits A and B are hosted on licensed streaming and lyrics platforms that deploy technological measures to control access to those works. These measures include, without limitation: user-authentication requirements (login credentials and session tokens); paid-subscription paywalls; CAPTCHA and bot-detection challenges; IP-based rate limiting; JavaScript rendering requirements; and Terms of Service and robots.txt directives restricting automated access. These measures effectively control access to Gerencia's copyrighted works within the meaning of 17 U.S.C. § 1201(a)(3)(B).

75. Bright Data violated 17 U.S.C. § 1201(a)(2) by manufacturing, offering, providing,

and trafficking in technology, services, and devices—including its Web Unlocker, proxy networks, and scraping infrastructure—that are primarily designed to circumvent the technological protection measures described above, that have only limited commercially significant use apart from such circumvention, and that are marketed for use in circumventing such measures.

76. Bright Data further violated 17 U.S.C. § 1201(a)(1) by itself circumventing, or by directing the circumvention of, these access controls in the course of scraping Gerencia's copyrighted works from the platforms on which they are hosted.

77. Suno violated 17 U.S.C. § 1201(a)(1) by circumventing—directly or through the use of Bright Data's tools and services—technological measures that effectively controlled access to Gerencia's copyrighted works on licensed streaming and lyrics platforms, thereby obtaining unauthorized access to and copies of those works for use in training its AI model.

78. Defendants' violations of § 1201 were willful and conducted for commercial advantage and financial gain.

79. Gerencia has been damaged by Defendants' violations and is entitled to remedies under 17 U.S.C. § 1203, including injunctive relief, actual damages or statutory damages of up to $2,500 per violation under § 1203(c)(3)(A), costs, and attorneys' fees. There are 444 Works on Exhibit A and 730 Works on Exhibit B for a total of 1,174 Works for a total of $2,935,000.

**FOURTH CAUSE OF ACTION – REMOVAL OR ALTERATION OF CMI, 17 U.S.C. § 1202**

**(AGAINST ALL DEFENDANTS)**

80. Gerencia re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

81. Gerencia's copyrighted Works listed in Exhibits A and B, as displayed on licensed lyrics platforms and streaming services, bear copyright management information within the meaning of 17 U.S.C. § 1202(c), including: the title of the composition; the identity of the songwriter(s) and/or composer(s); the identity of the copyright owner and/or publisher (Gerencia); and other identifying data such as ISRC codes and copyright notices.

82. Defendants intentionally removed or altered CMI from Gerencia's copyrighted Works listed in Exhibits A and B, during its data-cleaning pipeline, in violation of 17 U.S.C. § 1202(b)(1).

Upon information and belief, Defendants' engineers selected a data-extraction methodology that aggressively stripped authorship and ownership metadata, choosing it over available alternatives that would have preserved that information. Defendants further distributed copies of Gerencia's Works with CMI removed through Suno's outputs, in violation of 17 U.S.C. § 1202(b)(3).

83. Defendants knew, or had reasonable grounds to know, that its removal and omission of CMI would induce, enable, facilitate, or conceal infringement. Suno was aware that its AI models tend to memorize and reproduce training-data content. It follows that stripping CMI during training would ensure that Suno would not attribute its lyric outputs to their true authors—concealing Suno's own infringement and facilitating further infringement by users who receive copyrighted lyrics without any indication of their protected status. This satisfies the "double scienter" requirement established in *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671, 673 (9th Cir. 2018); *see Concord Music Group, Inc. v. Anthropic PBC*, No. 5:24-cv-03811-EKL, 2025 WL 4808984 *5 (N.D. Cal. Oct. 6, 2025) (holding similar allegations sufficient at the pleading stage, citing *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025), and *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 173 (2d Cir. 2020)).

84. Bright Data intentionally removed or altered CMI from Gerencia's Works during the scraping and data-assembly process, in violation of 17 U.S.C. § 1202(b)(1). Upon information and belief, Bright Data's extraction tools stripped or discarded the authorship and ownership metadata that accompanied Gerencia's lyrics and recordings on the source platforms. Bright Data further distributed copies of Gerencia's Works with CMI removed by supplying scraped datasets to AI developers including Suno, in violation of 17 U.S.C. § 1202(b)(3). Bright Data knew or had reasonable grounds to know that distributing stripped-down copies of copyrighted works to AI training operations would facilitate large-scale infringement.

85. Defendants' violations of § 1202 were willful and conducted for commercial advantage.

86. Gerencia has been damaged by Defendants' violations and is entitled to remedies under 17 U.S.C. § 1203, including injunctive relief, actual damages or statutory damages of up to $25,000 per violation under § 1203(c)(3)(B), costs, and attorneys' fees. There are 444 Works on

Exhibit A and 730 Works on Exhibit B for a total of 1,174 Works for a total of $29,350,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gerencia 360 Music, Inc. respectfully requests that this Court enter judgment against Defendants and grant the following relief:

(a) A declaration that Defendants have infringed Gerencia's copyrighted Works listed in Exhibit A in violation of 17 U.S.C. §§ 106 and 501;

(b) A declaration that Defendants have violated 17 U.S.C. § 1201 by circumventing, and by trafficking in tools designed to circumvent, technological measures effectively controlling access to Gerencia's copyrighted Works listed in Exhibits A and B;

(c) A declaration that Defendants have violated 17 U.S.C. § 1202 by intentionally removing or altering copyright management information from Gerencia's Works listed in Exhibits A and B and distributing copies with such information removed, with knowledge or reasonable grounds to know that doing so would induce, enable, facilitate, or conceal infringement;

(d) A permanent injunction prohibiting Defendants, and their officers, agents, employees, successors, and assigns, from further infringing Gerencia's copyrights or engaging in any of the unlawful conduct alleged herein;

(e) An order directing Defendants to deliver for impoundment or destruction all unauthorized copies of Gerencia's copyrighted Works in their possession, custody, or control—including copies retained in training datasets, internal repositories, model weights, and server infrastructure—pursuant to 17 U.S.C. § 503(b);

(f) An order requiring Defendants to provide a complete accounting of all training data, scraping activities, and datasets involving Gerencia's copyrighted Works;

(g) An award of actual damages suffered by Gerencia and disgorgement of Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b); or, in the alternative, an award of statutory damages of up to $150,000 per work willfully infringed, pursuant to 17 U.S.C. § 504(c);

(h) An award of actual damages or statutory damages of up to $2,500 per violation of 17 U.S.C. § 1201 and up to $25,000 per violation of § 1202, pursuant to 17 U.S.C. § 1203(c);

(i) An award of Gerencia's reasonable attorneys' fees and costs of suit, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4)-(5);

(j) Pre-judgment and post-judgment interest at the maximum lawful rate; and

(k) Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Gerencia 360 Music, Inc. demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: August 31, 2026

*<u>/s/ Richard S. Busch</u>*

**ADAMS & REESE, LLP**
Richard S. Busch (SBN 319881)
Mark L. Block (SBN 115457)
Andrew H. "Drew" Davis (pro hac vice forthcoming)
David Niemierzycki (pro hac vice forthcoming)
1600 West End Ave., Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470
*richard.busch@arlaw.com*
*mark.block@arlaw.com*
*drew.davis@arlaw.com*
*david.niemierzycki@arlaw.com*

**SKAGGS FAUCETTE LLP**
Jeffrey E. Faucette (SBN 193066)
Martin R. Glick (SBN 40187)
505 Montgomery Street, 11th Floor
San Francisco CA 94111
Tel: (415) 874-3181
Fax: (888) 980- 6547
*jeff@skaggsfaucette.com*
*marty@skaggsfaucette.com*

*Attorneys for Plaintiff*

**FILER'S ATTESTATION**

I, Richard S. Busch, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

*/s/ Richard S. Busch*